

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS
## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

February 17, 1939

Honorable Geo. H. Sheppard
Comptroller of Public Accounts
Austin, Texas

Dear Sir:

Opinion No. O-229
Re: Liability of attorney
operating, collecting
or commercial agency
under a trade name to
the gross receipts tax
levied by Art. 7061, R.C.S.

Under date of January 26, 1968, you inquire of this
Office whether or not an attorney or firm of attorneys will be
subject to the occupation or gross receipts tax levied by Article
7061, Revised Civil Statutes, 1925, by reason of the operation
of a collecting or commercial agency either in connection with
their legal practice or separate and apart from such practice.
It appears from your letter that the business of a collecting
or commercial agency is, in every instance, conducted under a trade
name and that the attorneys in question refused to pay said gross
receipts tax by reason of the fact that they were attorneys.

Article 7061, Revised Civil Statutes, reads as follows:

"Each individual, company, corporation or associa-
tion, owning, operating, managing or controlling any
collecting agency, commercial agency or commercial re-
porting credit agency within this State, and charging
for collections made, or business done, or reports made,
shall make quarterly, on the first days of January,
April, July and October of each year, a report to the
Comptroller under oath of the individual or of the
president, treasurer, or superintendent of such company,
corporation or association, showing from business done
within this State the gross amount received in the
payment of charges for collections made and business
done and reports made during the quarter next preceding.
Such individuals, companies, corporations or associations
at the time of making said report shall pay to the Trea-
surer of this State an occupation tax for the quarter
beginning on said date equal to one-half of one per cent
of said gross receipts as shown by said report."

Your inquiry resolves itself into this:  If the business of operating, owning, managing or controlling a collecting agency or a commercial agency within this State is a mere incident of the profession of law, this gross receipts tax will not lie against the attorneys involved in your letter.  If, on the other hand, the operation in Texas of a collecting or commercial agency is an independent business rather than a necessary incident to the practice of law, then we must hold that the attorneys in question are liable for this gross receipts or occupation tax despite their professional franchise to practice law.

We think the line of demarcation between the profession of law and the business of conducting a collecting or commercial agency is clearly drawn by the authorities, and we are constrained to hold that the attorneys involved in the instant case must pay the gross receipts tax levied by Article 7061, Revised Civil Statutes.

A "collection agency" was defined by the Court in McCarthy v. Hughes, 88 A. 984, as follows:

"A 'collection agency', which is defined as a concern which collects all kinds of claims for others and to whom it renders accounts, guarantees to use its best endeavors to collect the claims and to select a competent and reliable attorney when suit is necessary, for whose negligence, dishonesty, or unauthorized acts it will save the creditor harmless."

A "commercial agency" was defined by the court in case of Zugalla v. International Mercantile Agency, 142 Fed. 927, 930, as follows:

"A 'commercial agency' is a person, firm, or corporation engaged in the business of collecting information as to the financial standing, ability, and credit of persons engaged in business, and reporting the same to subscribers or customers applying and paying therefor."

The term "commercial agency" is again defined as follows:

"Commercial agencies are agencies whose business it is to collect information as to the circumstances, means, and pecuniary ability of merchants and dealers throughout the country, and keep accounts thereof, so

that the subscriber to the agency, when applied
to by a customer to sell goods to him on credit, by
referring to the agency or to the lists which it
publishes, may ascertain the standing and responsibil-
ity of the customer to whom it is proposed to extend
credit." Eaton, Cole & Burnham Co. v. Avery, 83 N. Y.
31, 34, 38 Am. Rep. 389; Genesee Sav. Bank v. Michigan
Barge Co., 17 N. L. 790, 793, 52 Mich. 164; 40 C. J.
636; State vs. Morgan, 48 N. b. 314.

The practice of law, as commonly known and understood,
really needs no definition, but in view of the contention of
the attorneys in the instant case that practice of law comprehends
a commercial agency, we quote the following definition from the
court in the case of State Bar of California v. Superior Court
in and for Los Angeles, County, 278 P. 432, 437:

"The 'practice of law' is the doing or performing
services in a court of justice, in any manner depending
therein, throughout its various stages, and in conformity
to the adopted rules of procedure. But in a larger
sense it includes legal advice and counsel, and the
preparation of legal instruments and contracts by which
legal rights are secured, although such matter may or
may not be depending a court."

The case of Kendrick v. State, 120 So. 142, by the Supreme
Court of Alabama, clearly differentiates the practice of law from
the operation of a collecting or commercial agency. This case
turns upon a construction of an act prohibiting anyone but a
licensed attorney from undertaking for another the collection of
claims out of court, with reference to the constitutional provision
requiring each law to contain but one subject which shall be clearly
expressed in its title. The court held the act to be violative of
such constitutional provision in the following significant language:

"To practice law is to exercise the calling or
profession of the law, usually for the purpose of gain-
ing a livelihood, or at least for gain. To engage in
the business of collecting claims by demand or negotia-
tion out of court is not to practice law. There is no
more necessary relation between the two than there is
between the practice of law and scores of other things
which lawyers, in common with other folks, must do in
order to be able to follow their different vocations.
The act under consideration, section (d), involves a
radical change of meaning in the collocation of words



"practice law." To collect claims out of court, that is, without recourse to legal remedies, and to practice law connote very different things to the lay mind, and we have stated the steps necessary to the making of a licensed lawyer, in order to show how broad is the technical difference between the two. The opinion in Ex parte Cowert, supra, presents a close analogy. The language of that case (page 100 (9 So. 225) we think may be fairly paraphrased as follows: No man to whom is presented a proposition to amend a statute declaring that regularly licensed attorneys alone have authority to practice law, would for a moment conceive the proposition to involve an inhibition against the collection of claims by demand or negotiation out of court by anyone but a licensed attorney."

We have no difficulty in answering your question in the affirmative, and you may accordingly proceed to collect from the attorneys in question the gross receipts tax levied by Article 7061, Revised Civil Statutes, 1925, by virtue of the ownership, operation or management by them of a "collecting agency" or "commercial agency" within the meaning of said statute.

Yours very truly

ATTORNEY GENERAL OF TEXAS

By      Pat M. Neff, Jr.
Assistant

PMN:N

APPROVED

ATTORNEY GENERAL OF TEXAS